**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| JAMES LOGAN and NATHAN BAXTER, individually and on behalf of all others similarly situated, | Civil Action No. 4:22-cv-00174 |
| Plaintiffs, | |
| v. | |
| MARKER GROUP, INC., a Texas corporation, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT MARKER GROUP, INC.'S MOTION TO DISMISS**
**PLAINTIFFS' CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   RELEVANT FACTUAL ALLEGATIONS ................................................................... 1

III.  ARGUMENT ................................................................................................................. 3

  A.   Plaintiffs' Claims Should Be Dismissed for Lack of Article III Standing ...................... 3

    1.  Plaintiffs Bear the Burden of Establishing Standing .................................................. 3

    2.  Plaintiffs Must Show Injuries-in-Fact ........................................................................ 4

    3.  Plaintiffs Do Not Have Article III Standing to Seek Damages .................................. 4

    4.  Plaintiffs Do Not Have Article III Standing to Seek Injunctive Relief ...................... 7

    5.  Mitigation Efforts Do Not Establish an Injury-in Fact Under Article III .................. 8

    6.  Plaintiffs Cannot Show Standing through Alleged Diminution in Value of Personal
        Information .................................................................................................................. 9

  B.   Plaintiffs Have Failed to State a Claim Upon Which Relief Can Be Based ................... 9

    1.  Choice of Law ........................................................................................................... 10

    2.  Plaintiffs Have Failed to State a Claim for Negligence ............................................ 11

    3.  Plaintiffs Have Failed to State a Claim for Breach of Implied Contract .................. 12

    4.  Plaintiffs Have Failed to State a Claim for Invasion of Privacy .............................. 13

    5.  Plaintiffs Have Failed to State a Claim for Unjust Enrichment ............................... 14

    6.  Plaintiffs Have Failed to State a Claim for Breach of Confidence ........................... 14

    7.  Plaintiffs Have Failed to State a Claim for Declaratory and Injunctive Relief ......... 15

    8.  Plaintiff Bowen Has Failed to State a Claim for Violation of the California
        Confidentiality of Medical Information Act .............................................................. 16

        a.  Marker Group Is Not a Provider of Health Care ................................................. 16

        b.  Marker Group Did Not Disclose Plaintiffs' Medical Information in Violation of
            Section 56.10 ........................................................................................................ 17

i

c. Marker Group Did Not Negligently Release Plaintiffs' Medical Information in Violation of Section 56.101 ................................................................. 18

C. Alternatively, Immaterial and Impertinent Allegations Should Be Stricken ................. 19

IV. CONCLUSION ............................................................................................................ 20

# **TABLE OF AUTHORITIES**

Page(s)

<u>Cases</u>

*Aguinaga v. Sanmina Corp.*,
  1998 WL 241260 (N.D. Tex. May 4, 1998) ........................................................... 14

*Anderson v. Ultraviolet Systems, Inc.*,
  2005 WL 1840155 (S.D. Tex. July 29, 2005) ....................................................... 14

*Aransas Project v. Shaw*,
  775 F.3d 641 (5th Cir. 2014) ............................................................................... 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................ 9, 10

*Beaumont v. Basham*,
  205 S.W.3d 608 (Tex. App. 2006) ........................................................................ 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................... 5, 9, 10

*Benchmark Elecs. v. J.M. Huber Corp.*,
  343 F.3d 719 (5th Cir. 2003) ............................................................................... 10

*Billings v. Atkinson*,
  489 S.W.2d 858 (Tex. 1973) ................................................................................ 13

*Bradix x. Advance Stores Co., Inc.*,
  2016 WL 3617717 (E.D. La. July 6, 2016) .............................................................. 6

*Buxani v. Nussbaum*,
  940 S.W.2d 350 (Tex. App. 1997) ........................................................................ 12

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) .......................................................................................... 4, 8

*Cuvillier v. Taylor*,
  503 F.3d 397 (5th Cir. 2007) ............................................................................... 10

*DynaStudy, Inc. v. Houston Indep. Sch. Dist.*,
  325 F. Supp. 3d 767 (S.D. Tex. 2017) .................................................................. 19

*Falkenberg v. Alere Home Monitoring, Inc.*,
  2015 WL 800378 (N.D. Cal. Feb. 23, 2015) ........................................................ 19

*Farhood v. StrataCare, LLC*,
   2019 WL 1771651 (Cal. Ct. App. Apr. 23, 2019)..............................................18

*Greater Houston Transp. Co. v. Phillips*,
   801 S.W.2d 523 (Tex. 1990) ............................................................................11

*Green v. eBay, Inc.*,
   2015 WL 2066531 (E.D. La. May 4, 2015) ......................................................9

*Home Builders Ass'n of Miss., Inc. v. City of Madison*,
   143 F.3d 1006 (5th Cir. 1998) ..........................................................................4

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
   2021 WL 5937742 (D.N.J. Dec. 16, 2021).....................................................7, 9

*In re Capital One Consumer Data Sec. Breach Litig.*,
   488 F. Supp. 3d 374 (E.D. Va. 2020) ..............................................................15

*Krottner v. Starbucks Corp.*,
   406 F. App'x 129 (9th Cir. 2010) .....................................................................11

*Kuhns v. Scottrade, Inc.*,
   868 F.3d 711 (8th Cir. 2017) ...........................................................................15

*Legg v. Leaders Life Ins. Co.*,
   2021 WL 5772496 (W.D. Okla. Dec. 6, 2021) ..............................................5, 7, 9

*Lincoln v. Turner*,
   874 F.3d 833 (5th Cir. 2017) .............................................................................9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .......................................................................................3, 4

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) ........................................................................................15

*Oddei v. Optum, Inc.*,
   2021 WL 6333467 (C.D. Cal. Dec. 3, 2021)...................................................17

*Oliphant Fin., LLC v. Galaviz*,
   299 S.W.3d 829 (Tex. App. 2009) ...................................................................12

*Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*,
   879 F.3d 339 (D.C. Cir. 2018)...........................................................................6

*Peters v. St. Joseph Services Corp.*,
74 F. Supp. 3d 847 (S.D. Tex. 2015) ................................................................. 6

*Regents of Univ. of Calif. v. Superior Ct.*,
220 Cal. App. 4th 549 (2013) ............................................................................ 18

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ........................................................................................ 4

*Storm v. Paytime, Inc.*,
90 F. Supp. 3d 359 (M.D. Pa. 2015) ................................................................. 12

*Sutter Health v. Superior Court*,
227 Cal. App. 4th 1546 (2014) ..................................................................... 18, 19

*Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*,
300 S.W.3d 348 (Tex. App. 2009) .................................................................... 14

*TransUnion, LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ................................................................................. Passim

*Waxler v. Household Credit Servs., Inc.*,
106 S.W.3d 277 (Tex. App. 2003) ................................................................... 11

<u>Statutes</u>

28 U.S.C. § 2201 .................................................................................................. 15

28 U.S.C. § 2202 .................................................................................................. 15

Cal. Civ. Code § 56.06(a) .................................................................................. 17

Cal. Civ. Code § 56.10 ........................................................................... 16, 17, 18

Cal. Civ. Code § 56.101 ......................................................................... 16, 18, 19

<u>Rules</u>

Federal Rule of Civil Procedure 12(b)(1) ........................................................... 3

Federal Rule of Civil Procedure 12(f) ........................................................ 19, 20

Federal Rules of Civil Procedure 12(b)(6) .......................................................... 9

Other Authorities

Restatement (Second) of Conflict of Laws § 145(2) (1971)......................................................... 10

## I.      INTRODUCTION

Plaintiff James Logan and Nathan Baxter have not been the victims of identity theft. There are no allegations in the Complaint that cybercriminals have used their personal information to commit fraud or any other type of nefarious scheme. Further, the Complaint is silent as to whether Plaintiffs have suffered any type of economic harm stemming from the data security breach suffered by Defendant Marker Group, Inc. ("Marker Group"). Accordingly, Plaintiffs have not suffered injuries-in-fact and do not have standing to bring this putative class action lawsuit under Article III of the United States Constitution. The Court should dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

Even if Plaintiffs had standing to pursue this lawsuit, they have failed to plead sufficient facts to state a claim for any of the causes of action asserted in the Complaint. The Complaint should therefore also be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

## II.     RELEVANT FACTUAL ALLEGATIONS

Marker Group provides "record collection, medical review, data analysis, and many other litigation support services" to some of "the world's most prestigious defense law firms." Compl. ¶ 2 (citing https://www.marker-group.com). Among the services that Marker Group provides are the retrieval, collection, and storage of medical records and other documentation for large-scale mass tort and multi-district litigation. *Id*. Marker Group "operates an ftp platform system that allows medical records and other personal information and documentation to be uploaded, stored, sorted, and analyzed." *Id*. Plaintiffs in litigation against Marker Group's corporate clients routinely upload protected health information ("PHI") and personally identifiable information ("PII") to Marker Group's litigation portal. *Id*. ¶ 3. Plaintiffs James Logan and Nathan Baxter were plaintiffs

in *In re: Proton-Pump Inhibitor Products Liability Litigation* (MDL-2789) in the U.S. District Court for the District of New Jersey. *Id*. ¶ 4. Pursuant to a case management order entered in that case, Plaintiffs uploaded "their plaintiff fact sheets, medical, pharmacy, and insurance records, and executed authorizations for obtaining medical records, employment, and insurance documents to the global ShareFile site maintained by Marker Group." *Id*.

On September 3, 2021, Marker Group discovered suspicious activity on certain systems in its computer network. *Id*. ¶ 8. In its Notice of Data Breach, which was dated December 23, 2021, Marker Group stated "that an unknown, unauthorized third-party accessed Defendant's server associated with its litigation portal" and "that an unauthorized third-party accessed files containing sensitive information, including names, Social Security numbers, dates of birth, addresses and medical records." *Id*. ¶ 9, 37.

Plaintiff Logan is a Georgia resident who received notice of the breach on or about January 14, 2022. *Id*. ¶ 86. "The notice stated that [Logan's] name, Social Security number, date of birth, medical records containing treatment and insurance information were contained in files accessed and potentially acquired during the Data Breach." *Id*. Logan has not alleged anything resembling identity theft, but, instead, alleged that he "encountered a situation with his treating physician in which it appeared that information unrelated to him had been transmitted to his physician under his name." *Id*. ¶ 88. Plaintiff Baxter is a California resident who alleges that he "has received a barrage of calls regarding Medicare insurance coverage. Because the callers relay information and offers that contradict his current coverage (such as offers to decrease his premium when he has none), Plaintiff Nathan Baxter has realized that these calls are not legitimate." *Id*. ¶ 91. He "has also recently started receiving unsolicited loan offers which contain his personal information." *Id*. ¶ 92. Neither Plaintiff has alleged any specific economic harm. Instead, they allege injuries in the

form of a potential increased risk of identity theft, diminution in value of their personal information, and "lost time, annoyance, interference, and inconvenience as a result of the Data Breach." *Id*. ¶¶ 95-97.

Plaintiffs seek to represent a class consisting of "[a]ll United States residents whose PII and/or PHI was actually or potentially compromised in the Data Breach first reported by Marker Group, Inc. in December 2021." *Id*. ¶ 100. Baxter also seeks to represent a subclass consisting of "[a]ll California residents whose PII and/or PHI was actually or potentially compromised in the Data Breach first reported by Marker Group, Inc. in December 2021." *Id*. ¶ 101.

## III.    ARGUMENT

### A.    Plaintiffs' Claims Should Be Dismissed for Lack of Article III Standing

Plaintiffs have failed to sufficiently plead any factual material showing that they suffered concrete injuries-in-fact sufficient to give rise to standing under Article III of the United States Constitution. The Court should therefore dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

### 1.    Plaintiffs Bear the Burden of Establishing Standing

Article III limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. Art. III, § 2. To have standing under Article III, a plaintiff must show each of the following elements: (1) an injury-in-fact; (2) a traceable causal connection between the injury and the conduct complained of; and (3) that it is likely, as opposed to merely speculative, that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "Standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Id*. at 560.

"A case is properly dismissed for lack of subject matter jurisdiction when [a federal] court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998) (internal citation omitted). "As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *TransUnion*, *LLC v. Ramirez,* 141 S. Ct. 2190, 2207 (2021). A plaintiff must demonstrate standing "with the manner and degree of evidence required at the successive stages of the litigation," including at the pleading stage. *Lujan,* 504 U.S. at 561.

### 2.      Plaintiffs Must Show Injuries-in-Fact

To have standing to sue, a plaintiff must have suffered an injury-in-fact that is concrete, particularized, and actual or imminent, not merely conjectural or hypothetical. *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1548 (2016); *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 416 (2013). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo,* 136 S. Ct. at 1548 (quoting *Lujan,* 504 U.S. at 560 n.1). As for concreteness, "[a] concrete injury must be *de facto*; that is, it must actually exist." *Id.* (internal citations and quotation marks omitted). In other words, it must be "real, and not abstract." *Id.* (internal citations and quotation marks omitted). Because an injury-in-fact cannot be conjectural or hypothetical, mere "[a]llegations of possible future injury are not sufficient." *Clapper,* 568 U.S. at 409. "Under Article III, federal courts do not adjudicate hypothetical or abstract disputes." *TransUnion,* 141 S. Ct. at 2203.

### 3.      Plaintiffs Do Not Have Article III Standing to Seek Damages

Plaintiffs have failed to carry their burden to establish standing to pursue this case under Article III. According to the allegations in the Complaint, neither Plaintiff has suffered any actual

injury, such as identity theft. Because a plaintiff must have already suffered an injury-in-fact in order to have Article III standing in a case for damages, Plaintiffs' claims should be dismissed.

Plaintiffs do not allege that they were victims of identity theft, financial fraud, or any other harm. Instead, Logan alleges that he "encountered a situation with his treating physician in which it appeared that information unrelated to him had been transmitted to his physician under his name." *Id*. ¶ 88. That is not identity theft or fraud. Most likely, it was a clerical error at his physician's office. Baxter's factual allegations fare no better. Like many Americans, he states that he is the recipient of numerous spam calls and unsolicited loan offers. *Id*. ¶¶ 91, 92. While allegations of spam calls and unsolicited offers may be "'consistent with' data misuse," they do "not 'plausibly suggest' that any actual misuse of Plaintiff's personal identifying information has occurred." *Legg v. Leaders Life Ins. Co*., No. 21-655, 2021 WL 5772496, at *6 (W.D. Okla. Dec. 6, 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Simply put, neither Plaintiff can point to any injury-in-fact that would give rise to Article III standing.

Plaintiffs have also failed to allege any risk of future harm that can confer standing. In *TransUnion*, the Supreme Court clarified the standard that a plaintiff must meet when seeking to establish standing on the basis of a potential future injury. In assessing whether the risk of future harm can constitute an injury-in-fact under Article III, the Supreme Court distinguished between claims seeking injunctive relief and claims seeking monetary damages, finding that in a suit for damages, the mere risk of future harm, without more, cannot qualify as a concrete harm sufficient to establish standing. *Id*. at 2211. Instead, the Supreme Court held that a plaintiff must show that the harm actually materialized. *Id*.

In reaching its conclusion, the Supreme Court likened the statutory violation underlying the *TransUnion* plaintiffs' claimed injuries to the common law tort of defamation and explained

that "there is 'no historical or common-law analog where the mere existence of inaccurate information, absent dissemination, amounts to concrete injury.'" *Id*. at 2209 (quoting *Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*, 879 F.3d 339, 344 (D.C. Cir. 2018)). In rejecting the argument that risk of future disclosure of a credit report could serve as a concrete harm constituting an injury-in-fact satisfying Article III, the Supreme Court agreed with the argument TransUnion advanced:

> [I]f an individual is exposed to a risk of future harm, time will eventually reveal whether the risk materializes in the form of actual harm. If the risk of future harm materializes and the individual suffers a concrete harm, then the harm itself, and not the pre-existing risk, will constitute a basis for the person's injury and for damages. If the risk of future harm does *not* materialize, then the individual cannot establish a concrete harm sufficient for standing[.]

*TransUnion*, 141 S. Ct. at 2211 (emphasis in original). Similarly, in this case, Plaintiffs have alleged that their personal information may have been accessible without authorization during the incident, but no allegations of concrete injury exist until it can be proven that information was actually misused in some way.

    Before *TransUnion*, the Fifth Circuit had not addressed whether the risk of future identity theft is sufficient to confer standing to a plaintiff in a data breach class action. District courts within the Fifth Circuit, however, had found that a mere risk of future identity theft is not enough to establish standing in a data breach class action. *See Peters v. St. Joseph Services Corp.*, 74 F. Supp. 3d 847, 856 (S.D. Tex. 2015) (finding plaintiff "lacks standing to bring her federal claims to the extent they are premised on the heightened risk of future identity theft/fraud"); *Bradix x. Advance Stores Co., Inc*., No. 16-4902, 2016 WL 3617717, at *4 (E.D. La. July 6, 2016) (dismissing case where "[a] careful review of Plaintiff's complaint makes it clear there is no certainly impending injury alleged"). This case law is consistent with the Supreme Court's holding in *TransUnion* that

risk of future harm is not sufficient to confer standing in a case for monetary damages. *TransUnion*, 141 S. Ct. at 2211

As one recent decision noted, "[g]iven the holding in *TransUnion*, it is far from clear that any case finding a concrete injury based merely on an abstract risk of future identity theft following a data breach is still good law, at least with respect to a claim for damages." *Legg*, 2021 WL 5772496, at *6. Indeed, in data privacy class actions since *TransUnion*, courts have found plaintiffs lack Article III standing where their purported injuries-in-fact consist of the risk of future identity theft. *See id.* at *7 (dismissing case where "Plaintiff only pleads facts showing that there is a non-imminent risk of possible future injury following the data breach, [which] is not sufficient to confer standing"); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 19-2904, 2021 WL 5937742, at *10 (D.N.J. Dec. 16, 2021) (dismissing claims brought by plaintiffs alleging risk of future identity theft who "fail to account for . . . the Supreme Court's recent admonition that an unmaterialized risk of future of harm cannot confer standing in a claim for damages"). Plaintiffs have not suffered identity theft or any other already-materialized harm stemming from the Marker Group data security incident, and they do not have standing to seek monetary damages.

### 4.    Plaintiffs Do Not Have Article III Standing to Seek Injunctive Relief

Plaintiffs also do not have standing to seek the injunctive relief requested in Count VI of the Complaint. A plaintiff may rely on a potential future injury to establish standing to seek "forward-looking" injunctive relief, "at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion*, 141 S. Ct. at 2210 (internal citations omitted). Plaintiffs have not pled facts that show they are at a "substantial and imminent" risk of identity theft, nor have they identified any "forward-looking" relief that would potentially alleviate any purported risk.

First, the Marker Group data security incident occurred nearly seven months ago. Not only have Plaintiffs failed to plead any facts showing that they suffered identity theft or some other harm resulting from that incident, but given the passage of time since the incident, they cannot allege that they are at an imminent and substantial risk of suffering any such harm.

Second, the Complaint does not specifically identify any "forward-looking" injunctive relief that could possibly prevent any potential future harm stemming from the incident from occurring. *See TransUnion*, 141 S. Ct. at 2210 (internal citations omitted). Instead, Plaintiffs request that Marker Group make various changes to its data security. Compl. ¶ 208, Prayer for Relief (C). Changes to Marker Group's current data security systems cannot prevent any potential harm that may occur related to an incident that already occurred. Plaintiffs have failed to establish standing to seek "forward-looking" injunctive relief designed to prevent an imminent and substantial harm.

### 5.      Mitigation Efforts Do Not Establish an Injury-in Fact Under Article III

Attempting to allege some type of redressable injury, Plaintiffs also claim they were forced to spend time and money on mitigation efforts related to the risk of identity theft. But if the risk of future identity theft itself cannot establish standing, Plaintiffs cannot manufacture standing by incurring self-imposed costs.

Although Plaintiffs generally allege that they incurred out-of-pocket expenses and lost time mitigating the consequences of the breach, they have not included any specific factual allegations regarding how they incurred out-of-pocket expenses or how they "lost time" through mitigation efforts. Even if they had included such allegations, however, a plaintiff cannot "manufacture standing" simply by "incur[ing] certain costs as a reasonable reaction to a risk of harm." *Clapper*, 568 U.S. at 416. Here, where the harm of identity theft failed to materialize, Plaintiffs cannot use

mitigation efforts to create Article III standing where it does not already exist. "Thus, while it may have been reasonable to take some steps to mitigate the risks associated with the data breach, those actions cannot create a concrete injury" sufficient to confer standing to seek damages. *Legg*, 2021 WL 5772496, at \*7.

### 6. Plaintiffs Cannot Show Standing through Alleged Diminution in Value of Personal Information

Plaintiffs also argue that they have suffered injuries in the form of "lost or diminished value of PII and PHI." Compl. ¶ 18. They have not—and cannot—offer any factual support for this argument.

The decisions that have accepted diminution in value of personal information to establish standing "involved circumstances where the defendants collected information that was itself monetized and used for commercial purposes." *In re Am. Med. Collection Agency*, 2021 WL 5937742, at \*10. "The [Complaint] here contains no similar allegation. Absent such circumstances, there is no loss of value in the information sufficient to state a concrete injury." *Id.*; *see also Green v. eBay, Inc.*, No. 14-1688, 2015 WL 2066531, \*5 n.59 (E.D. La. May 4, 2015) ("Plaintiff has failed to allege facts indicating how the value of his personal information has decreased as a result of the Data Breach."). Plaintiffs have offered no factual support for the conclusory argument their information lost value. Accordingly, they cannot rely on this theory to establish standing.

### B. Plaintiffs Have Failed to State a Claim Upon Which Relief Can Be Based

To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (citing *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked

9

assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 558).

Plaintiffs have failed to plead sufficient facts to support any of the causes of action set forth in the Complaint.

### 1.    Choice of Law

As an initial matter, the Court must decide which state's law to apply. A federal court sitting in diversity jurisdiction applies the choice of law rules from the forum state. *Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003) (internal citation omitted). Under Texas choice of law rules, "courts look to 'the law of the state with the most significant relationship to the particular substantive issue . . . to resolve that issue, except in those contract cases in which the parties have agreed to a valid choice of law clause." *Taylor v. U.S. Bank Nat'l Ass'n*, No. 12-3550, 2015 WL507526, at *5 (S.D. Tex. Feb. 6, 2015) (internal citation and quotation marks omitted). In making this determination, courts consider factors including "1) the place where the injury occurred; 2) the place where the conduct causing the injury occurred; 3) the domicil, residence, nationality, place of incorporation and place of business of the parties, and 4) the place where the relationship, if any, between the parties is centered." *Id*. (citing Restatement (Second) of Conflict of Laws § 145(2) (1971)).

Here, Plaintiffs are residents of Georgia and California, respectively, who were plaintiffs in a litigation pending in New Jersey that required them to upload their personal information to the

Marker Group's online portal. Compl. ¶¶ 4, 20, 21. Although the litigation was centered in New Jersey, it was a multi-district litigation that consolidated cases from various other judicial districts in the United States. *Id*. ¶ 4. Marker Group is a Texas corporation with its headquarters in Texas, where it conducted the business that was the subject of the cyberattack. Compl. *Id*. ¶ 22.

For purposes of this Motion, with the exception of Plaintiff Baxter's cause of action under the California Confidentiality of Medical Information Act ("CMIA"), Marker Group applies Texas law.

### 2.    Plaintiffs Have Failed to State a Claim for Negligence

Plaintiffs have not included any factual information in the Complaint that shows they have suffered any damages as a result of the Marker Group data security incident. They have, therefore, failed to state a cause of action for negligence.

Under Texas law, the elements of a cause of action for negligence are (1) a legal duty owed by one person to another; (2) a breach of that duty; (3) the breach was an actual cause of injury; and (4) actual injury. *See Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex. 1990). "Because actual injury is an element of a negligence claim, [a]n action for negligence cannot be maintained unless some damages result therefrom." *Waxler v. Household Credit Servs., Inc*., 106 S.W.3d 277, 280 (Tex. App. 2003) (internal citation and quotation marks omitted).

Neither Plaintiff alleges that there is any ongoing, present harm, such as a fraudulent bank account or non-reimbursed fraudulent charges, resulting from the alleged negligence. Nor does either Plaintiff allege any specific economic damage. Instead they rely on the risk of future identity theft, undefined future mitigation expenses relating to identity theft losses or protective measures, lost opportunity costs, and loss of value in their personal information. These are not compensable damages for a negligence claim in data breach litigation. *See, e.g., Krottner v. Starbucks Corp.,*

11

406 F. App'x 129, 131 (9th Cir. 2010) (data breach plaintiffs "have not established a cognizable injury for purposes of their negligence claim" because "[t]he alleged injuries here stem from the danger of future harm"); *Storm v. Paytime, Inc.*, 90 F. Supp. 3d 359, 367-68 (M.D. Pa. 2015) (no actual injury based on preventative measures taken to prevent future injury in connection with data breach). Neither Plaintiff has alleged facts showing actual injury. Count I should be dismissed.

### 3.    Plaintiffs Have Failed to State a Claim for Breach of Implied Contract

To state a claim for breach of implied contract, a plaintiff must allege facts showing that there was a meeting of the minds on the terms of the alleged contract. That is a showing that Plaintiffs have not—and cannot—make.

Under Texas law, "[t]he elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tender of performance; (3) breach by the defendant; and (4) damages resulting from the breach." *Oliphant Fin., LLC v. Galaviz*, 299 S.W.3d 829, 834 (Tex. App. 2009). "Parties form a binding contract when the following elements are present: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Buxani v. Nussbaum*, 940 S.W.2d 350, 352 (Tex. App. 1997). "In a contract implied in fact, which is the same as an express contract except for the manner of proof, the element of mutual assent can be inferred from the circumstances of the transaction." *Id*. (internal citation and quotation marks omitted).

Plaintiffs allege that they

> were required to provide their PII and PHI, including their names, Social Security numbers, addresses, dates of birth, telephone numbers, email addresses, and various health related information to Defendant as a condition of their use of Defendant's services. By providing their PII and PHI, and upon Defendant's acceptance of such information, Plaintiffs and

all Class Members, on one hand, and Marker Group on the other hand,
entered into implied-in-fact contracts for the provision of data security.

Compl. ¶ 159. There was no meeting of the minds here. From the allegations of the Complaint, it
is unclear if Plaintiffs even knew Marker Group's purpose in the underlying litigation. They simply
allege that they were required to upload information to a ShareFile site in order to proceed with
their case. *Id*. ¶ 4. Plaintiffs do not allege that Marker Group made any particular representations
about data security as part of that alleged transaction or indicated an intention to be contractually
bound in any other way. Further, as explained above, neither Plaintiff has suffered any damages.

Plaintiffs never entered into an implied contract with Marker Group and have not suffered
any damages. Count II should be dismissed.

### 4.    Plaintiffs Have Failed to State a Claim for Invasion of Privacy

Plaintiffs base their cause of action for invasion of privacy on an intrusion upon seclusion
theory. They have failed, however, to plead any facts showing that Marker Group knowingly
allowed third parties to access Plaintiffs' information. By failing to plead facts showing intentional
action, Plaintiffs have failed to state a claim for invasion of privacy.

Invasion of privacy consists of four separate torts, each protecting a different privacy
interest: (1) unreasonable intrusion upon the seclusion or private affairs of another; (2)
unreasonable publicity given to an aspect of one's private life in which the public has no legitimate
concern; (3) publicity that unreasonably places another in a false light before the public; and (4)
unwarranted appropriation of one's name or likeness. *See Billings v. Atkinson*, 489 S.W.2d 858,
860 (Tex. 1973). Plaintiffs base their cause of action on an intrusion upon seclusion theory. Compl.
¶ 173. Plaintiffs must therefore plead facts showing "(1) the defendant intentionally intruded on
the plaintiff's solitude, seclusion, or private affairs; and (2) the intrusion would be highly offensive
to a reasonable person." *Beaumont v. Basham*, 205 S.W.3d 608, 614 (Tex. App. 2006). Courts

13

have repeatedly held that, under Texas law, "invasion of privacy is an intentional tort." *Anderson v. Ultraviolet Systems, Inc*., No. 03-2873, 2005 WL 1840155, at *15 (S.D. Tex. July 29, 2005); *Aguinaga v. Sanmina Corp*., No. 97-1026, 1998 WL 241260, at *4 (N.D. Tex. May 4, 1998).

Plaintiffs have not pled any facts showing that Marker Group intentionally allowed an unauthorized third party to access Plaintiffs' information. Count III should be dismissed.

### 5.   Plaintiffs Have Failed to State a Claim for Unjust Enrichment

Plaintiffs allege that that Marker Group benefitted financially from the receipt of Plaintiff's information through its contracts with its customers. Comp. ¶ 181. However, Plaintiffs did not confer any benefit on Marker Group. Only Marker Group's clients conferred a financial benefit on Marker Group. Plaintiffs have failed to state a cause of action for unjust enrichment.

Unjust enrichment occurs when a person has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain. *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc*., 300 S.W.3d 348, 367 (Tex. App. 2009). Here, Plaintiffs have not conferred any benefit upon Marker Group. Like many other litigants, they merely uploaded their information to Marker Group's platform. Because they have not conferred a benefit and Marker Group has not received any benefit from them, Count IV should be dismissed.

### 6.   Plaintiffs Have Failed to State a Claim for Breach of Confidence

In Count V, Plaintiffs assert a claim for a tort called "breach of confidence" and have premised this claim on their allegations that Marker Group was aware of the confidential and personal nature of the information it received from Plaintiffs, that Marker Group received this information understanding that it was not to be disclosed to the public or to unauthorized third parties, and that Marker Group failed to prevent the information from being disclosed to such third parties. However, there does not appear to be any authority under Texas law that recognizes breach

14

of confidence as a viable cause of action. *See In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 409 n.21 (E.D. Va. 2020) (dismissing breach of confidence claim in data breach case because it is not recognized under Texas law). Accordingly, Count V should be dismissed.

### 7. Plaintiffs Have Failed to State a Claim for Declaratory and Injunctive Relief

In Count VI of the Complaint, Plaintiffs seek declaratory and injunctive relief. They are entitled to neither.

The Declaratory Judgment Act allows a court, in the case of an actual controversy, to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. To state a claim for relief under the Declaratory Judgment Act, a plaintiff must adequately allege a dispute that is: (1) "definite and concrete, touching the legal relations of parties having adverse legal interests"; (2) "real and substantial"; and (3) "admit[ting] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

When seeking declaratory relief, "the plaintiff must show a real and immediate threat of future or continuing injury apart from any past injury." *Aransas Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014) (internal citation omitted). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Id.* (internal citation omitted). By focusing on past actions, Plaintiffs have failed to meet their burden. *See, e.g., Kuhns v. Scottrade,*

*Inc.*, 868 F.3d 711, 718 (8th Cir. 2017) (dismissing declaratory judgment claim focused on a past data breach and not ongoing conduct). The allegations in the Complaint focus on a data security incident that occurred seven months ago. Plaintiffs have not pled any facts that show any ongoing or continuing injury and are not entitled to declaratory relief.

Moreover, as noted above, Plaintiffs have failed to specify any "forward-looking" injunctive relief that would address a risk of harm that is "sufficiently imminent and substantial." *TransUnion*, 141 S. Ct. at 2210 (internal citations omitted). They do not have standing to seek injunctive relief. Count VI should be dismissed.

### 8.   Plaintiff Baxter Has Failed to State a Claim for Violation of the California Confidentiality of Medical Information Act

Plaintiff Baxter asserts the CMIA claim on behalf of the California subclass. This cause of action fails because Marker Group is not a "provider of health care" under the statute. Even if Marker Group met the statutory definition, however, Plaintiffs have also failed to plead factual material showing a CMIA violation.

### a.   Marker Group Is Not a Provider of Health Care

Plaintiffs allege that Marker Group violated Sections 56.10 and 56.101 of the California Civil Code. Section 56.10 states that "[a] provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization." Cal. Civ. Code § 56.10. Section 56.101 states that "[a]ny provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information" in a manner that does not preserve the confidentiality of the information shall be liable under the CMIA. Cal. Civ. Code § 56.101.

16

Plaintiffs allege that Marker Group qualifies as a "provider of health care" under Cal. Civ. Code § 56.06(a). Compl. ¶ 211. That provisions defines a "provider of health care" as "[a]ny business organized for the purpose of maintaining medical information . . . in order to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage his or her information, or for the diagnosis and treatment of the individual." Cal. Civ. Code § 56.06(a). Beyond that conclusory allegation, there is nothing in the Complaint that shows the Marker Group fits within that definition. Plaintiffs can point to no facts showing that Marker Group maintains medical information "in order to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage his or her information, or for the diagnosis and treatment of the individual." *Id.* Instead Plaintiffs allege that Marker Group provides "record collection, medical review, data analysis, and many other litigation support services" to some of "the world's most prestigious defense law firms." Compl. ¶ 2 (citing https://www.marker-group.com). There is nothing in the statutory definition of "provider of health care" that would encompass the litigation support services that Marker Group provides. *See Oddei v. Optum, Inc.*, No. 21-3974, 2021 WL 6333467, at *2 (C.D. Cal. Dec. 3, 2021) (dismissing CMIA claim where the complaint "does not contain any facts demonstrating that ScanSTAT" is a provider of health care). Because Marker Group is not a provider of health care, the CMIA cause of action should be dismissed.

### b.    Marker Group Did Not Disclose Plaintiffs' Medical Information in Violation of Section 56.10

Even if Marker Group were a provider of health care, Plaintiffs have not pled any facts showing that Marker Group affirmatively disclosed their confidential medical information in violation of Cal. Civ. Code § 56.10.

17

"'Disclosure' is covered in section 56.10, subdivision (a) and refers to affirmative communicative acts—giving out medical information on a patient." *Sutter Health v. Superior Court*, 227 Cal. App. 4th 1546, 1554-55 (2014). A "disclosure within the meaning of section 56.10, subdivision (a), 'occurs when the health care provider [or other covered entity] affirmatively shares medical information with another person or entity.'" *Farhood v. StrataCare, LLC*, No. B279993, 2019 WL 1771651, at *4 (Cal. Ct. App. Apr. 23, 2019) (quoting *Sutter Health*, 227 Cal. App. 4th at 1555-56)). Here, Plaintiffs, despite alleging violations of section 56.10, can point to no affirmative communicative acts undertaken by Marker Group. Instead they allege that "Marker Group knowingly allowed and affirmatively acted in a manner that actually allowed unauthorized parties to access and view the PII and PHI of Plaintiff Nathan Baxter and California Subclass Members." Compl. ¶ 216. Even assuming that allegation is true, Plaintiffs cannot point to any facts showing an affirmative disclosure of information by Marker Group, which means they have failed to state a claim under section 56.10.

> ### c.    Marker Group Did Not Negligently Release Plaintiffs' Medical Information in Violation of Section 56.101

Plaintiffs have similarly failed to show a negligent release of information under Cal. Civ. Code § 56.101.

Stating a cause of action for negligent maintenance or storage of confidential medical information in violation of section 56.101 requires more than an allegation of loss of possession by the health care provider. *Regents of Univ. of Calif. v. Superior Ct.*, 220 Cal. App. 4th 549, 570 (2013). "What is required is pleading, and ultimately proving, that the confidential nature of the plaintiff's medical information was breached as a result of the health care provider's negligence." *Id.*; *see also Sutter Health*, 227 Cal. App .4th at 1557 ("While loss of possession *may result* in breach of confidentiality, loss of possession *does not necessarily result* in a breach of

confidentiality. For that reason, a plaintiff must allege a breach of confidentiality, not just a loss of possession, to state a cause of action for nominal or actual damages under section 56.101") (emphasis added). "Without an actual confidentiality breach there is no injury and therefore no negligence under section 56.101." *Sutter Health*, 227 Cal.App.4th at 1558. Thus, in order to state a claim for negligent release of confidential medical information in violation of Section 56.101, Plaintiffs "must plead that an unauthorized third party viewed or accessed their confidential information." *Falkenberg v. Alere Home Monitoring, Inc*., No. 13-0341, 2015 WL 800378, at *3 (N.D. Cal. Feb. 23, 2015) (internal citations omitted). Although Plaintiffs have pled facts showing that there was a data breach, they have not pled facts showing that an unauthorized actor actually viewed or accessed their information. They have therefore failed to show a violation of section 56.101. Count VII should be dismissed.

### C.        Alternatively, Immaterial and Impertinent Allegations Should Be Stricken

If the Court does not dismiss the Complaint, it should strike the immaterial and impertinent allegations concerning identity theft that have nothing to do with the parties or facts of this case.

Federal Rule of Civil Procedure 12(f) permits a court to strike immaterial and impertinent allegations from a pleading on its own or upon motion by a party. *See* Fed. R. Civ. P. 12(f). A motion to strike under Rule 12(f) should be granted "when the pleading to be stricken has no possible relation to the controversy." *DynaStudy, Inc. v. Houston Indep. Sch. Dist*., 325 F. Supp. 3d 767, 772 (S.D. Tex. 2017) (internal citation and quotation marks omitted).

Instead of focusing solely on the relevant data security incident and Plaintiffs' individual experiences, Plaintiffs have added extraneous material concerning the actions of identity thieves and statistics about cybercrime. *See* Compl. ¶¶ 42-46, 55-62. Plaintiffs have pled no actual facts regarding the motivations of the cybercriminals who executed the attack on Marker Group. To

19

make up for that missing information, Plaintiffs include immaterial and generalized allegations that are designed to improperly inflame the issues and lend weight to the alleged risk of future identity theft. Plaintiffs should limit the Complaint to the Marker Group data security incident and their individual experiences, and the Court should strike paragraphs 42-46 and 55-62 pursuant to Rule 12(f).

## IV.    CONCLUSION

For all the foregoing reasons, Defendant Marker Group respectfully requests that Plaintiffs' Complaint be dismissed in its entirety with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In the event the Court does not dismiss the Complaint, Marker Group respectfully requests that it strike paragraphs 42-46 and 55-62 from the Complaint pursuant to Federal Rule of Civil Procedure 12(f).

Dated: April 1, 2022                          Respectfully submitted,

*/s/ Amanda Harvey*
Amanda Harvey
TX Bar No. 24046038
SD Tex ID No. 915379
MULLEN COUGHLIN LLC
1452 Hughes Road, Suite 200
Grapevine, TX 76051
Phone: (267) 930-1697
Fax: (267) 930-4771
aharvey@mullen.law

*Counsel for Defendant*

20